GEORGE H. JOHNSTON *vs.* BOARD OF COUNTY COMMISSIONERS OF BECKER COUNTY.

July 27, 1880.

**Contract by County involving Indebtedness greater than allowed by Law.**— Gen. St. 1866, *c.* 11, § 78, provides for an annual levy on each dollar of taxable property, "as valued and entered on the grand list of taxable property," for the purpose of covering, among other things, all county expenses other than for roads, bridges, and the payment of the interest and principal of county debts, such rate as the county commissioners shall determine to be necessary, "not exceeding 10 mills on the dollar on the taxable property of the county." Section 79 provides that it shall be unlawful for the corporate authorities of any county, unless expressly authorized by law, to incur any pecuniary liability, for the payment of either the principal or interest of which, during the then current or any subsequent year, it will be necessary to levy a higher rate of tax than the maximum rate above mentioned. Section 80 provides that every contract made in contravention of the provisions of the foregoing section is utterly null and void in regard to any obligation imposed on the corporation in behalf of which such contract purports to be made. On December 7, 1872, the plaintiff, of the one part, and the board of county commissioners of Becker county, of the other, entered into a contract in writing, whereby the former agreed to build a jail for the use of the county, to be completed by July 1, 1873, the latter party agreeing to pay therefor $1,300 in county orders, upon its com-

pletion. *Held,* 1, that the agreement to issue the county orders, if valid, was the incurring of a "pecuniary liability" on the part of the county. 2. That in considering whether a given amount of pecuniary liability could be incurred, the county board was bound to inquire whether such amount in money could be raised by a levy of 10 mills on a dollar of the taxable property of the county, as the same appeared upon the *subsisting* grand list of the county, which was, in this case, the grand list made in 1872. 3. That as $930.45 was all that could be levied on such grand list, at the rate of 10 mills on the dollar, the agreement for the building of the jail and payment therefor was void as respected the county.

Appeal by plaintiff from an order of the district court for Becker county, *Stearns,* J., presiding, refusing a new trial.

*Kerr* v. *Wilson,* for appellant.

*Cromb & Offerd* and *W. P. Warner,* for respondent.

BERRY, J. Gen. St. 1866, c. 11, § 78, provides that "there shall be levied annually on each dollar of taxable property in this state, (other than such as by law is otherwise taxed,) as valued and entered on the grand list of taxable property, for the several purposes in this chapter enumerated, taxes at the rates hereafter specified, namely: all county expenses of each of the several counties other than for roads and bridges, and the payment of the interest and principal of the debts of the county, such rate as the commissioners of such county determine to be necessary, not exceeding ten mills on the dollar on the taxable property of the county."

Section 79 provides that "it shall be unlawful for the corporate authorities of any county, * * * unless specially and expressly authorized by law, to contract any debt, or incur any pecuniary liability, for the payment of either the principal or interest of which, during the then current year, or any subsequent year, it will be necessary to levy on the taxable property of such county * * * a higher rate of tax than the maximum rate prescribed by this chapter."

Section 80 provides that "every contract made in contravention of the provisions of the foregoing section is utterly null and void in regard to any obligation thereby imposed on the corporation on behalf of which such contract purports to

be made; but every commissioner, officer, agent, supervisor, or member of any municipal corporation, that makes, or participates in making, or authorizes the making of any such contract, shall be held individually liable for its performance; and every commissioner, supervisor, * * * or other officer or agent of any such municipal corporation present when any such unlawful contract was made, or authorized to be made, shall be deemed to have made, or to have participated in making, or to have authorized the making of the same, as the case may be, unless, if present, he dissented therefrom, and entered, or caused to be entered, such dissent on the records of such municipal corporation."

On December 7, 1872, the plaintiff of the one part, and the defendant of the other part, entered into a contract in writing, whereby the former agreed to build a jail for the use of the county of Becker, the same to be completed by July 1, 1873; the latter party agreeing to pay therefor the sum of $1,300, in county orders of said county, upon completion of such jail. Nine hundred and thirty dollars and forty-five cents was all that could be levied as taxes for the year 1872, at the maximum rate of 10 mills per dollar upon the taxable property entered upon the grand list made in 1872; $3,559.73 could be levied as taxes for the year 1873, at the maximum rate of 10 mills per dollar upon the taxable property entered upon the grand list made in 1873; so that the price agreed to be paid for the jail ($1,300) was greater than the amount of taxes leviable in 1872, and less than the amount leviable in 1873. If this contract was valid, there can be no doubt that the defendant's agreement to issue the county orders upon the completion of the jail on or before July 1, 1873, was the incurring of a "pecuniary liability" on the part of the county. The orders, when issued, would be evidence of a debt of the county, due immediately, for the payment of which it would be necessary at some time to raise money by taxation.

The important question in the case is whether, in incurring

this "pecuniary liability" to the amount of $1,300, the defendant board exceeded its authority under the statutory provisions before quoted. This question is to be answered by determining what grand list a board of county commissioners is required to look at, in considering whether a given sum of money can be raised by a levy of 10 mills on a dollar of the taxable property of the county. Though the statutory provisions quoted are not well expressed, we think that the general intention of the legislature is plain. The manifest purpose is to fix a definite limit, beyond which a county board shall not go, in levying taxes. Now, in order to make the limit definite, it is indispensable that the value of the taxable property of the county, upon which the taxes are to be raised, be definitely ascertainable by reference to some grand list. This necessarily requires that the grand list shall be in existence at the time when the question, how large a pecuniary liability can be incurred within the ten-mill limits, is considered and passed upon; that is to say, the grand list to which the county board must look is the subsisting grand list—the list which shows how much taxable property there is in the county at the time when the pecuniary liability is incurred. From the time when a given list becomes the subsisting grand list of the taxable property of the county, until it is superseded by a succeeding grand list, it is the grand list of the county to which the county board must look. Any other construction of the statute than this would leave the county board to speculate upon the amount of some grand list to be made in the future, the amount of which it would be absolutely impossible definitely to foresee, and would, therefore, completely thwart the manifest purpose of the legislature. It would authorize the board to charge a county with "pecuniary liability," not upon any definite standard of taxable property, but upon the mere expectation of what that standard might be at some future time.

The application of these views to this case is this: The contract in this case having been made in December, 1872,

the subsisting grand list was that made in that year. To this the board should have looked in determining how large a pecuniary liability, payable in July, 1873, for the building of a jail, as in this case, it could properly incur. As we have before seen, $930.45 was the limit, and consequently, under the statute, the contract to incur such liability to the amount of $1,300 was void.

Order affirmed.